UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

JERREN JONES,

    Plaintiff,

    v.                                                                                      Case No. 4:24-CV-2-GSL-APR

JARED BAER and TOWN OF WOLCOTT,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 77] filed on June 25, 2025, by Defendants Jared Baer and the Town of Wolcott. Plaintiff Jerren Jones, *pro se*, filed a response on July 24, 2025, to which Defendants replied on August 25, 2025. For the reasons below, the Court grants the motion.

### PROCEDURAL BACKGROUND

On December 14, 2023, Plaintiff filed his complaint against the Wolcott Police Department and a Deputy Winkler in the Southern District of Indiana. The case was then transferred to this district. Once in this district, the case was originally assigned to Judge Jon DeGuilio and was subsequently reassigned to the undersigned. Plaintiff filed amended complaints on May 10, 2024, August 23, 2024, and October 22, 2024. The named defendants of the third (and operative) amended complaint are Jared Baer and the Town of Wolcott. Plaintiff brings claims under 42 U.S.C. § 1983 for civil rights violations related to a traffic stop conducted by Baer, the Town of Wolcott's Marshal. The case proceeded through discovery, which closed on May 30, 2025. The instant motion for summary judgment followed, which is now fully briefed and ready for the Court's adjudication.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

In deciding a motion for summary judgment, a court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, a court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

## MATERIAL FACTS[1]

On July 19, 2022, a 911 caller reported a tanker with a white cab being driven very slowly and weaving on the roadway. Wolcott Town Marshal Jared Baer, on duty at the time, received information about the call from dispatch. Baer himself observed the reported vehicle

---

[1] These facts are drawn from Defendants' statement of undisputed material facts, which are supported with evidence submitted by Defendants. Plaintiff responded to this statement and asserted that facts are disputed, but he failed to provide "citation to evidence supporting each dispute of fact" as required by Northern District of Indiana Local Rule 56-1(b)(2)(C). Merely claiming that a fact is disputed does not make it so for summary judgment analysis.

2

driving 27 m.p.h. in a 45-m.p.h. zone. For several miles, Baer observed the semi driver, later identified as Jerren Jones, driving at inconsistent and low speeds as well as several instances of where the semi was drifting in the lane and going left of center. Baer turned on his emergency lights and siren, but Jones did not pull over and tried to wave Baer around him.

Jones acknowledges that when the uniformed police officer activated his emergency lights he knew the officer wanted to pull him over, but Jones did not pull over and continued driving, attempting to wave Baer around him even though Baer was using his air horn and was motioning for the driver to pull over. White County Sheriff's Deputy Mark Helms was approaching the location when Jones came to an intersection and pulled off U.S. 24. Because Jones had repeatedly ignored Baer's attempts to stop him and had attempted to wave Baer around him, Baer considered the stop as one presenting high risk and unholstered his weapon as he exited his vehicle.

As shown on the body cam footage, when Jones finally came to a stop, Baer exited his cruiser, stood behind the door, pointed with his left hand toward the cab and yelled at Jones to turn off the semi and put his hands out the semi window where Baer could see them. Baer brought his hands together to hold his firearm, but did not point his weapon at Jones. Baer directed Jones into a position where Jones could be safely detained. At most, Baer's weapon was in a ready position for approximately 90 seconds and was holstered once Jones was in a kneeling position. Baer never pointed his weapon directly at Jones.

Baer observed that Jones's speech was lethargic, his eyes were glassy, eyelids were droopy, and he appeared to have a very dry mouth. Jones consented to taking field sobriety tests, and he did not pass a horizonal gaze nystagmus test. Baer observed signs consistent with intoxication or other impairment. Jones agreed to take a portable breath test, which was

3

administered and registered a .01 breath alcohol concentration level. The other officers at the scene agreed that Jones was impaired.

Baer told Jones he would retrieve Jones's driver's license from the truck cab, and Jones did not object. Baer observed three cell phones in the cab and asked Jones if he wanted Baer to retrieve those, to which Jones answered affirmatively. Jones consented to a chemical test, and Baer transported Jones to the IU Health White Memorial Hospital for a blood draw. After the blood draw, Baer told Jones that he was being charged with failing to stop for an emergency vehicle and that the blood draw would be sent to the state lab for analysis. Baer transported Jones to the White County Jail. The body cam footage does not reveal any threats of harm to Jones nor any derogatory or racist remarks by Baer or any other officer.

## ANALYSIS

Defendants argue that summary judgment should be granted in their favor because Defendant Baer has qualified immunity, because Baer did not violate Plaintiff's constitutional rights, and because there is no basis to hold Defendant Town of Wolcott liable.

Plaintiff did not submit any evidence to support his position that Defendants violated his civil rights. As stated above, Plaintiff cannot rest on his pleadings to withstand summary judgment. Being a pro se litigant "doesn't alleviate [a party's] burden on summary judgment." *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011).

### A. Qualified Immunity

"Qualified immunity shields a government official from suit for damages under § 1983 'when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (citations omitted); *see also Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) ("Whether

qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts." (internal quotation omitted)). Qualified immunity turns on two inquiries: (1) "whether the facts, taken in the light most favorable to the party asserting the injury[,] show that the officer's conduct violated a constitutional right[,]" and (2) "whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Defendants argue that Baer is entitled to qualified immunity because he did not violate Plaintiff's rights. They argue that Baer had a reasonable, articulable suspicion of criminal activity that permitted the traffic stop, that Plaintiff consented and/or did not object to Baer entering the cab of Plaintiff's vehicle to retrieve Plaintiff's wallet and cell phones, that Baer unholstered his weapon for only a brief period and doing so was reasonable under the circumstances, that Plaintiff consented to the blood test, and that there is no direct or indirect evidence that anyone acted with racial animus during Plaintiff's detention and arrest. Plaintiff has presented no evidence to create a genuine issue of material fact about any of these matters. Because no constitutional right has been established, Defendant Baer is entitled to qualified immunity for his actions during the encounter with Plaintiff.

### B. Conspiracy

Plaintiff contends there was a conspiracy to murder him and a conspiracy to violate his civil rights because of his race. "When a plaintiff claims that defendants conspired to violate [his] civil rights, [he] must proffer specific facts tending to show that a conspiracy existed to survive a summary judgment motion; conclusory allegations will not suffice." *Cooney v. Casady*, 746 F. Supp. 2d 973, 975 (N.D. Ill. 2010) (citing *Stagman v. Ryan,* 176 F.3d 986, 1003 (7th Cir.1999)). Defendants maintain that Plaintiff has no evidence of conspiracy beyond conjecture

and speculation. Plaintiff has presented no evidence to support his contention that there were conspiracies against him. On this basis, the Court grants the motion for summary judgment as to the allegations of conspiracy.

### C. Municipal Liability

Plaintiff brought suit against the Town of Wolcott in addition to Defendant Baer. "A municipality is a 'person' under § 1983 and may be held liable for its own violations of the federal Constitution and laws." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). However, to succeed on a § 1983 *Monell* claim against a municipality, "a plaintiff must challenge conduct that is properly attributable to the municipality itself." *City of Chi.*, 988 F.3d at 986 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997). In other words, a plaintiff must prove that a constitutional violation was caused by a governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *City of Chi.*, 988 F.3d at 986 (quoting *Monell*, 436 U.S. at 694).

"[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). Because Plaintiff has not presented evidence of a constitutional violation, there is no basis on which to hold the Town of Wolcott liable for a violation of Plaintiff's civil rights. The Court enters summary judgment in favor of the Town of Wolcott and against Plaintiff on all claims brought against the town.

# CONCLUSION

Based on the above, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [DE 77]. The Court **DIRECTS** the Clerk of Court to enter judgment against Plaintiff Jerren Jones and in favor of Defendants Jared Baer and Town of Wolcott. Plaintiff takes nothing by his complaint.

SO ORDERED.

ENTERED: October 6, 2025

                                              /s/GRETCHEN S. LUND
                                              Judge
                                              United States District Court